IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| VICKY M. WRIGHT | ) | 8:04CV265 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| NEBRASKA HEALTH AND HUMAN SERVICES SYSTEM, | ) ) | |
| | ) | |
| Defendant. | ) | |

## Introduction

This matter is before the court on the motion for summary judgment of defendant Nebraska Department of Health and Human Services (NDHHS), Filing No. 34. This is an action against NDHHS under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Plaintiff alleges that she applied for three vacant NDHHS social service worker positions in October and December 1998, and that those three positions were filled by "younger and less qualified" applicants. Filing No. 1. Plaintiff further alleges that NDHHS rejected her application for these positions because of her age and in retaliation for previous complaints plaintiff filed against NDHHS. Filing No. 1. On June 29, 2004, the defendant filed a motion to dismiss plaintiff's age discrimination claims from her complaint pursuant to Fed. R. Civ. P. 12(b). Filing No. 5. On February 14, 2005, the court granted the defendant's motion. Filing No. 31. The plaintiff's Title VII claim of retaliation is the only claim remaining before this court.

## Factual Background

Plaintiff began her employment at NDHHS as a case maintenance worker in October of 1977. Filing No. 1. In January 1985, plaintiff filed a charge of discrimination

against the defendant after not being selected for promotion. Filing No. 1. Then in 1994, NDHHS placed plaintiff on six months disciplinary probation and demoted plaintiff from case maintenance worker to case aide. Ex. 2. The primary job of a case aide is to assist social service workers. Ex. 16. Plaintiff's demotion occurred after an audit of plaintiff's caseload which produced a 59.7 percent overall accuracy rating. Ex. 3.

On July 2, 1998, plaintiff filed a charge of discrimination with the Nebraska Equal Opportunity Commission, alleging discrimination between October 1, 1997, and May 15, 1998. Plaintiff alleged verbal harassment by a coworker, Jerri Scheef. Ex. 4. In October 1998, NDHHS began to interview candidates for social worker positions. At the time of the interviews, plaintiff remained a case aide. Filing No. 1. Plaintiff interviewed for three of the posted social worker positions. Filing No. 1. Points were awarded to each applicant for the position based on education and experience in order to narrow the number of applicants. After the initial scoring process, a team of managers rate the applicants according to standardized scoring guidelines. Ex. 5. The applicants were also asked to participate in an arithmetic and writing exercise, and the applicants were scored accordingly. *Id.* NDHHS used references to confirm the qualifications of the highest scoring applicant or to break a tie between two candidates. The seniority of an applicant is only considered as a tie-breaker between two applicants who are equally qualified. *Id.* NDHHS considered two applicants with interview scores within five percent of one another "essentially equal." *Id.*

Of the three social worker positions available, the first two positions were filled by other applicants and the plaintiff admits she does not object to the candidates selected by the defendant. Ex. 1. The final two candidates for the third social worker position were

Angela Mitchell and plaintiff. Ex. 5. Ms. Mitchell received a good recommendation by her supervisor and a score of thirty-six on the written portion of the examination and a composite score of 117. Ex. 5. On October 21, 1998, the interviewers requested a reference from Ms. Mitchell's supervisor. *Id.* Her supervisor rated her as "above satisfactory" and indicated Ms. Mitchell needed to improve her written communication. Ex. 15. Mitchell scored well on the verbal and arithmetic interview portion and scored poorly on the written portion of the interview. Ex. 5. Since a noticeable discrepancy existed between her written scores and remaining interview scores, Mitchell was allowed to retake the written portion of the interview. Ex. 5. After her retake of the written portion, Mitchell's score increased from 117 to 123. Ex. 5., 19. Plaintiff scored poorly on the mathematical section of the examination but did not receive an opportunity to retake the exam.

The interviewers requested references from both plaintiff's and Mitchell's supervisors after receiving the scores of Ms. Mitchell's second written examination. Ex. 5. Plaintiff's supervisor rated the plaintiff's work as "unsatisfactory." Ex. 12. Plaintiff's supervisor stated plaintiff became "involved in several work incidents and in the long run could cause additional problems." *Id.* Mitchell received an "above satisfactory" reference from her supervisor. As a result, Mitchell received the third social service position on December 23, 1998. Ex. 10. On June 12, 2002, plaintiff became promoted from case aide to social service worker. Ex. 14.

<u>Summary Judgment Standard</u>

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the "evidence and the inferences which may be reasonably drawn from the

evidence in the light most favorable to the nonmoving party." *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Furthermore, the court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250.

If the nonmoving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Krenik v. County of LaSueur*, 47 F.3d 953, 957 (8th Cir. 1995). Generally, a genuine issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 248.

In employment discrimination cases, however, summary judgment is not granted "unless the moving party has established a right to a judgment with such clarity as to leave no room for controversy, and unless the other party is not entitled to recover under any discernible circumstances." *Krolikowski v. Richman Gordman 1/2 Price Stores, Inc.*, 38 F. Supp.2d 797, 800 (D. Neb. 1999), *(citing Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980)).

The Eighth Circuit has held on numerous occasions that "summary judgment should seldom be granted in discrimination cases." *Bassett v. City of Minneapolis*, 211 F.3d 1097,

4

1099 (8th Cir. 2000) (citing numerous cases standing for the same proposition). One district court in the Eighth Circuit cautioned: "Summary judgment is appropriate in employment discrimination cases only in 'those rare instances where there is no dispute of fact and where there exists only one conclusion.'" *Hasbrouck v. Youth Servs. Int'l, Inc.*, 2002 WL 1974043, *4 (N.D. Iowa Aug. 19, 2002) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir. 1991)). Summary judgment is proper when the plaintiff fails to demonstrate the existence of a factual dispute with regard to each essential element of her claim. *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 762 (8th Cir. 1995) (citing *Weber v. Am. Express Co.*, 994 F.2d 513, 515-16 (8th Cir. 1993)).

Discussion

RETALIATION

Plaintiff alleges that the defendant, NDHSS, rejected her application for social service positions in retaliation for previous complaints plaintiff filed against NDHSS. Filing No. 1. The defendant has moved for summary judgment on this claim. Filing No. 34. Under Title VII an employer is forbidden from retaliating against employees for opposing alleged discrimination. 42 U.S.C. § 2000e-3(a); *Bogren v. Minnesota*, 236 F.3d 399, 407 (8th Cir. 2000). The elements of the prima facie case for retaliation in violation of Title VII are the following: (1) the plaintiff filed a charge of harassment or engaged in other protected activity; (2) the plaintiff's employer subsequently took adverse employment action against the plaintiff; and (3) the adverse action was casually linked to the plaintiff's protected activity. *Manning v. Metropolitan Life Ins. Co., Inc.*, 127 F.3d 686, 692 (8th Cir. 1997), *citing Cram v. Lamson & Sessions, Co.,* 49 F.3d 466, 474 (8th Cir. 1995). In order to establish a claim of retaliation, plaintiff must show that she participated in a protected

5

activity; she suffered adverse employment action; and a causal connection to the activity and the employment action. The same burden-shifting then occurs wherein the employer must articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). The plaintiff must then show the reason was a pretext for discrimination. *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997). The fact finder is then "left to determine if the [employee] presented evidence capable of proving that the [employer's] proffered reasons for termination were a pretext for illegal retaliation." *Harris v. Secretary U.S. Dep't of the Army*, 119 F.3d 1313, 1318 (8th Cir. 1997).

"The retaliation provision of 42 U.S.C. § 2000e-3(a) does not itself contain language requiring a materially adverse employment action in order to state a claim." *Manning,* 127 F.3d at 692. "This requirement is inferred from the basic prohibition of employment discrimination set forth in 42 U.S.C. § 2000e-2(a)(1)-(2)." *Id.* In addition, "although actions short of termination may constitute an adverse employment action within the meaning of the statute, not everything that makes an employee unhappy is an actionable adverse action." *Id., citing Montandon v. Farmland Indus., Inc.*, 166 F.3d 355, 359 (8th Cir. 1997).

In the case at hand, the plaintiff alleges that the defendant's "action in failing to award the plaintiff one of the three open positions for which she applied is in retaliation for the [plaintiff's] prior complaints of discrimination made against [defendant] and her complaints concerning the conduct of a coworker in violation of 42 U.S.C. § 2000e *et seq.*" Filing No. 1. Plaintiff had filed previous charges of unlawful discrimination against the defendant prior to October of 1998. In addition, the plaintiff alleges making several complaints to Nebraska Health and Human Services regarding the conduct of a coworker.

6

Plaintiff further alleges that when her supervisor, Primus Jones, provided a reference as to the plaintiff, her supervisor knew of plaintiff's previous charges of discrimination filed against the defendant and, therefore, provided a negative evaluation of the plaintiff. Filing No. 1. As a result of this retaliation, plaintiff alleges that she has sustained and will continue to sustain in the future severe economic loss and emotional harm for which she claims should be compensated by the defendant. The court concludes that plaintiff has made a case for adverse employment action, based on treatment by her supervisors and the poor evaluation. Upon considering the evidence in the light most favorable to the nonmoving party, it appears the plaintiff has met the prima facie case for retaliation.

The same burden shifting then occurs wherein the employer must articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802. The defendant stated that Mitchell received the third social service position based on her interview scores and supervisor recommendation. Defendant alleges that Mitchell scored well on the verbal and arithmetic portion of her interview. In addition, after her retake of the written portion, Mitchell's scores increased from 117 to 123. Therefore, the court finds the defendant met the burden of establishing a nondiscriminatory reason for its actions.

Finally, the plaintiff must then show the reason was a pretext for discrimination. *Ledergerber*, 122 F.3d at 1144. Plaintiff is able to establish this by showing that defendant's action in failing to award the plaintiff one of the three open positions for which she applied is in retaliation for the plaintiff's prior complaints of discrimination made against defendant and her complaints concerning the conduct of a coworker. In addition, plaintiff alleges that her supervisor became aware of plaintiff's previous charges of discrimination filed against the defendant and, therefore, provided a negative evaluation of the plaintiff. Further, the

plaintiff scored poorly on the mathematical portion of her interview and did not receive an opportunity to retake that portion of her exam. Although this is a close case, the plaintiff has established a genuine issue of material fact exists and the case shall be allowed to proceed to trial. Consequently, this court shall deny defendant's motion for summary judgment on the retaliation claim.

THEREFORE, IT IS ORDERED that the defendant's motion for summary judgment, Filing No. 34, is hereby denied.

DATED this 25th day of August, 2005.

BY THE COURT:

s/Joseph F. Bataillon
JOSEPH F. BATAILLON
UNITED STATES DISTRICT JUDGE